In re ANNEXATION TO THE TOWN OF NORMAL.—(HUDSON COMMUNITY FIRE PROTECTION DISTRICT, Petitioner-Appellee, *v.* THE TOWN OF NORMAL, Objector-Appellant.)

(No. 12901;

Fourth District—October 16, 1975.

Frank Miles, Corporation Counsel, of Normal, for appellant.

Randall B. Ehlers and William A. Allison, both of Bane, Allison, Saint and Bliss, of Bloomington, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The Town of Normal appeals from a trial court order that parcels of land annexed to the town on December 7, 1970, and January 18, 1971, should remain a part of the Hudson Community Fire Protection District notwithstanding the annexation. While acknowledging our responsibility to affirm the trial court's decision unless it is manifestly against the weight of the evidence (*Reese v. Melahn*, 53 Ill.2d 508, 292 N.E.2d 375), we must nevertheless reverse.

These proceedings were initiated under section 20 of the fire protection districts act (Ill. Rev. Stat. 1965, ch. 127½, par. 38.3), which provides that annexation of territory to a town automatically transfers that territory to the municipal fire protection district unless the losing district petitions for a hearing and establishes that detachment would "impair the ability of the [losing] district to render fully adequate fire protection service to the territory remaining with the district."

The burden was on the petitioning district to establish the requisite impairment of ability. From the stipulations of the parties, it is apparent that the detachments affect less than one percent of the district's assessed valuation of around $16 million. The income which would have resulted from applying the district rate to the disputed parcels in 1970 is $189.12; in 1971 the figure would have been $271.09. By raising its levy from .0930 and .0935, respectively, to .1 percent, the maximum permissible without referendum, the Hudson district could have generated substantially more income in either of those years from the territory remaining within its boundaries than was lost by the detachment. The district had taken no steps to raise its levy, either with or without referendum, and had no bonds outstanding.

Petitioner's only witness testified to the district's need for a new pumper and other new equipment. He stated that operating expenses exhausted the district's income, but was evasive when asked whether the district had funds to purchase the needed items:

"Q. Since you have been a Trustee beginning in 1970, have there been adequate funds to purchase these items?

A. Well, the only time I talked to our President, he's kind of hard to deal with, and I found out a few new things that we could have had, some tax money that we never did get.

Q. But you did not, in fact, have any money or funds during that time from the taxes which you did receive to purchase these items?

A. Well, two years I had to borrow money; had to borrow $1,000. We didn't have enough. It's going to be awful close this year."

He admitted that some expensive new equipment had been purchased after the detachment of the disputed parcels. He could not say how much it cost to service the disputed area.

This testimony, though uncontradicted, was insufficient to demonstrate that the district's ability "to render fully adequate fire protection service" would be impaired by the detachment. The impairment alleged is purely monetary, yet it is apparent on the face of the record that the district's financial resources are adequate to replace the lost revenue. (*Winfield Fire Protection District v. City of Wheaton*, 29 Ill.App.3d 630, 332 N.E.2d 43.) The trial court's finding is contrary to the manifest weight of the evidence and must be reversed.

Reversed.

SIMKINS, P. J., and GREEN, J., concur.